THE ATCHISON, TOPEKA & SANTA FÉ RAILROAD COMPANY v. ALLEN WOODCOCK.

SPECIAL FINDINGS, *in Conflict with General Verdict.* When the special findings of a jury are in conflict with the general verdict and inconsistent with each other, and are so uncertain and incomplete that this court cannot render judgment on them, the judgment rendered by the trial court will be reversed, and the cause remanded for further proceedings.

*Error from Johnson District Court.*

THE opinion states the case. Judgment for plaintiff *Wood-cock* for $55, at the September term, 1887. The defendant company brings the case here.

*Geo. R. Peck, A. A. Hurd*, and *Robert Dunlap*, for plaintiff in error.

*A. Smith Devenney*, for defendant in error.

Opinion by SIMPSON, C.: On the 1st day of June, 1886, Allen Woodcock went to the union depot, at Kansas City, Mo., for the purpose of taking a train to Wilder, Johnson county, Kansas, a station on the Atchison, Topeka & Santa Fé Railroad seventeen miles west of Kansas City, Mo. He purchased a ticket at the union depot ticket office near 10 o'clock A. M. of said day, entitling him to ride on a passenger train of the A. T. & S. F. Rld. Co. from Kansas City, Mo., to Wilder. The ticket was not restricted or limited upon its face to any particular train. It seems that two trains of the A. T. & S. F. Rld. Co. departed from the union depot every morning, both of which ran through the town of Wilder — one train called the "local" and the other a "through train." The "local" usually departed at 9:30 A. M., and the other train left at 10:40 A. M., according to schedule time. At the time Woodcock purchased his ticket he asked the ticket agent, "How soon can I go to Wilder?" and the agent replied, "You can go right away; the train is ready." Woodcock immediately started out of the depot building to get upon the train, and as he passed out of the door facing the platform where the trains stood he met a man dressed in a gray uniform, with gilt buttons on his coat and a badge on his cap, of whom he asked, "Which is the Santa Fé train?" and he replied by pointing to the train that Woodcock got upon. Mr. W. proceeded directly to that train, and got on the side of the train next to the depot. He walked up the steps of the front end of the rear coach with his heavy grip in his hand and took a seat, and

remained there for fifteen or twenty minutes before the train started.　At the time he got upon the train there were none of the servants of the railroad company to be seen of whom he could make inquiry.　Just before the train reached Wilder the conductor took up his ticket, and informed him that he was on the wrong train, and that this train did not stop at Wilder.　Woodcock insisted that he was ignorant of any other train, earlier or later; that he had been misled by the ticket agent and the union depot usher; and he demanded that the train be stopped at Wilder, and he be given an opportunity to get off; but the conductor refused so to do, and demanded that he pay fare from Wilder to Lawrence, that being the first station at which the train stopped after leaving Kansas City, Mo.　The conductor said if he refused to pay to Lawrence he would have to stop the train and put him off.　The train was run some distance west of Wilder and there stopped. Woodcock was put off the train without violence, and walked back to Wilder, a distance of some two or three miles.　Woodcock alleges that he was not well at the time, and that the walk back to Wilder in the hot sun aggravated his illness. He attempted to transact his business at Wilder and in that vicinity, but rapidly grew worse, went home, and was laid up for a couple of months.　He was at this time in the employment of a nurseryman of Wyandotte county, and was receiving a salary of $50 per month and his expenses.

This statement of the case is taken literally from the brief of his attorney, and embraces a fair statement of the facts as given in evidence on the trial.　The jury gave him a verdict for $55, and judgment was rendered in his favor for that amount, with costs.　The jury returned answers in writing to special interrogatories, and among such answers are the following:

"8. Woodcock did not know, at the time he got upon said train, or at any time before it took its departure from Kansas City, Mo., that by the rules and regulations of the defendant company it was forbidden to stop at Wilder and discharge passengers."

"20. Woodcock was not guilty of any negligence, or the

want of ordinary care, or of any fault upon his part in the premises, which in any manner contributed to his alleged injuries."

"23. Woodcock entered the train by reason of none of the servants being then at the car to forbid his entering and taking a seat on that ticket."

"25. The plaintiff, Woodcock, exercised reasonable diligence to ascertain the proper train for him to get upon."

To the ninth special interrogatory submitted by the railroad company, in these words: "By the use of ordinary diligence could the plaintiff have ascertained that the train which he was about to take passage on did not stop at Wilder?" the jury answered, "Yes."

There is an irreconcilable conflict between these two special findings, and we are at a loss to determine how a judgment can be rendered while they remain in the record. At least we shall not undertake the task. As neither party made any attempt to have the conflict removed, by sending the jury back, or in any other manner correcting the error, the court of its own motion ought to have had the jury return such intelligent answers to these special interrogatories as would enable a judgment to be pronounced upon them, and made them consistent with each other and with the general verdict.

This court has said, in the case of *A. T. & S. F. Rld. Co. v. Gants*, 38 Kas. 608, that—

"It is the duty of a person about to take passage on a railroad train to inform himself when, where and how he can go or stop, according to the regulations of the railroad company."

And again it is held in that same case—

"Where a person purchases a railroad ticket for a designated station upon a railroad, without making any inquiries, or ascertaining what train stops at the station to which he desires to go; and subsequently takes his seat upon a car of a train which, according to the regulations of the company, does not stop at the station for which he has the ticket; and such person refuses to pay his fare, on demand of the conductor, to the next station at which the train is to stop; and also refuses to leave the train when requested so to do by the conductor, after he has stopped the train at a suitable place for that purpose, such person is a trespasser upon the train."

In the same volume, page 507, in the case of *S. K. Rly. Co. v. Hinsdale*, it is held that—

"It is the duty of a passenger to inform himself of the regulations governing the transit and conduct of the trains, if such rules are reasonable. If a passenger disregards the regulations adopted by a company as to the purchase of tickets, or the running of trains, by failure upon his part to make any inquiries, and such neglect is not induced by the company's agent having authority in the matter, the company is not liable therefor."

These cases were carefully considered, and we regard the law arising on the state of facts presented in this record well settled, and against the right of Woodcock to recover in this action. He did not make any inquiry as to the running of the trains. It was his duty to inform himself, before he entered the train, as to whether it stopped at Wilder. Failing to make any such inquiry, either of the ticket agent or of the employés upon the platform, he did not exercise ordinary diligence, and the result was due to his own negligence and carelessness. We make this statement of the law that must govern a new trial of this case, if one is ever had. One of these special findings is inconsistent with the general verdict, and directly conflicts with another special finding upon the same question. When the jury returned their verdict into court, either party could have called the attention of the court to the inconsistency, and objected to their reception. This was not done, but the questions presented on a motion for a new trial, and on a motion by the railroad company for judgment on the findings.

This case falls within the rule announced in *Harvester Co. v. Cummings*, 26 Kas. 367, and *C. I. & K. Rld. Co. v. Townsdin*, 38 id. 78. We are unable to enter judgment, because of the inconsistency of the special findings with the verdict and with each other.

It is recommended that the judgment be reversed, and the cause remanded with instructions to grant a new trial.

By the Court: It is so ordered.

All the Justices concurring.